UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

BERNICE A. INGRAM,

        Plaintiff,

v.                                         Case No. 07-CV-586

MICHAEL J. ASTRUE,

        Defendant.
_____

## ORDER

In May 2004, Bernice Ingram applied for disability insurance benefits under the Social Security Act. Ingram's application for benefits alleged that she became disabled within the meaning of the Social Security Act in May 2002. The Social Security Agency denied Ingram's application at the initial and reconsideration levels, and Ingram then requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 13, 2006, and on December 14, 2006, the ALJ issued a written decision denying Ingram's application for benefits. On June 25, 2007, Ingram filed a complaint in this court seeking review of the denial of her claim for social security disability benefits pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the ALJ's decision will be affirmed.

### BACKGROUND

At the hearing, Ingram appeared in person and was represented by Attorney Mark Wurtz. Ingram and a vocational expert testified. At the time of her hearing, Ingram was 49 years of age and alleged that she suffered from a disability due to varicose veins, sleep apnea, fibromyalgia, restless leg syndrom, and depression.

She testified that she graduated from high school and attended two years of college. (Tr. 224.) Her past relevant work history included positions with Goodwill and working at the Salvation Army. Ingram testified that the last time she was gainfully employed was at a crisis center in September 2002. In this position she wore many hats; she simultaneously assisted with grocery shopping for clients of the crisis center, cleaning their living facilities, teaching them to care for themselves, and serving as a mentor to them. She stated she left this position in approximately September 2004, primarily because her duties became too difficult for her to perform. (Tr. 226.)

With respect to her disability claims, Ingram testified that it is difficult for her to remain seated for longer than 30 to 40 minutes because of pain and discomfort in her legs. When seated, she also needs to have her legs elevated to alleviate some of this discomfort. Due to her ailments, Ingram suffers severe pain on most days. She takes a number of medications for her pain, and although this alleviates her pain, it does not reduce it completely. (Tr. 232-33.) Ingram stated the pain also makes sleeping difficult, and she testified that she regularly wakes up three to four times per night due to the pain. She further testified that the interrupted sleep leaves her more fatigued and causes her to suffer memory problems. (*See* Tr. 244-45.)

In her written decision, the ALJ applied a five-step sequential inquiry set forth in the Social Security regulations. The ALJ determined that Ingram was limited to performing sedentary work which involves lifting not more than 10 pounds, sitting for up to 6 hours in a day, and standing and walking for 2 hours a day. (Tr. 12.) With

-2-

Case 2:07-cv-00586-JPS   Filed 08/19/08   Page 2 of 11   Document 11

these restrictions, the ALJ found that Ingram would be unable to perform her past relevant work. However, the ALJ, with the benefit of the vocational expert's testimony, found that there were a number of jobs at the sedentary level for which Ingram would have transferable skills. The ALJ then applied Vocational Rule 201.22 and determined that because there were a significant number of jobs Ingram could have performed through the time she was last insured for benefits, she was not disabled within the meaning of the Social Security Act. (Tr. 13.)

## ANALYSIS

Social Security Disability cases are decided by reviewing the final decision of the Commissioner to determine if it is supported by substantial evidence. *See Key v. Sullivan,* 925 F.2d 1056, 1061 (7th Cir. 1991). The court does not make an independent determination as to whether a claimant is disabled or re-weigh the evidence; rather, when evaluating whether substantial evidence exists to support the ALJ's decision, the court considers the relevant evidence that a reasonable person might accept as adequate to support a conclusion. *See Young v. Secretary of Health and Human Serv.,* 957 F.2d 386, 388 (7th Cir. 1992); *see also Powers v. Apfel*, 207 F.3d 431 (7th Cir. 2000) (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Further, if the ALJ has not built "an accurate and logical bridge" between the evidence and the result, the reviewing court must remand for further findings, even if there is enough evidence in the record to support the ultimate result. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). In addition, this court may reverse if the

ALJ committed an error of law. *See Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir.1989).

To establish that she has a disability as defined by the Social Security Act, Ingram must demonstrate that she "suffers from a medically determinable physical or mental impairment, or combination of impairments 'which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months.'" *Naudain v. Apfel,* 119 F. Supp. 2d 812, 817 (C.D. Ill. 2000) (quoting 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A)). To determine the factual basis for a disability, the ALJ makes a five-step inquiry and analyzes: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520; *Allen v. Sullivan*, 977 F.2d 385 (7th Cir. 1992). The initial burden is on the claimant to show that she suffers from a "severe impairment" that prevents her from performing her past work. *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir. 1987).

In applying these factors, the ALJ made the following findings in her December 14, 2006 written decision:

1. Ingram had not engaged in substantial gainful activity since 2002.

2. Ingram met the disability insured status requirements of the Social Security Act through December 31, 2002.

3. Ingram is suffering from severe impairments namely chronic pain, symptomatic varicose veins, and mild lung disease, but her condition does not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4

4. Ingram's testimony that she was unable to work is not supported by the evidence regarding her level of activity.

5. Ingram is limited to performing sedentary work which involves lifting not more than 10 pounds, sitting for up to six hours in a day, and standing and walking for two hours in a day. She would need to change position occasionally.

6. Ingram cannot return to her past relevant work as she performed it.

7. Ingram was 49 years old at the time of the hearing and was 45 years old when she was last insured for disability benefits.

8. Ingram has a high school education and two years of college.

9. Ingram has transferable skills to sedentary work.

10. In considering Ingram's condition within the framework of Vocational Rule 201.22, there are a significant number of jobs in the economy which she could perform. These jobs were identified by a vocational expert.

11. Ingram had not been under a disability as defined by the Social Security Act at any time through December 2002.

(Tr. 13-14.)

The ALJ concluded that Ingram was capable of performing sedentary, skilled work similar to what she has performed in her past social service work. The ALJ further determined that there were a number of jobs in the economy she was capable of performing, and thus found that she was not under a disability, as defined by the Social Security Act, at any time through the date of the issued decision.

Ingram raises two issues to this court. First, she argues that the ALJ inappropriately determined that Ingram was a "younger person" as defined by Code of Federal Regulations. *See* 20 C.F.R. § 404.1563(c) (defining a "younger person" as under the age of 50). Ingram claims this was error because she has since turned 50, and the ALJ should have considered this as the relevant age in analyzing her claim. Ingram also argues that the ALJ erred as a matter of law because she failed to include all of the medically supported limitations in hypothetical questions she asked testifying vocational experts.

### A. Ingram's Age

Ingram, who is now 50, argues that the ALJ improperly assessed her claim in the context of a "younger person," rather than an "individual approaching advanced age (age 50-54)." *See* 20 C.F.R. § 404.1563(d). There are many medical and vocational guidelines in the regulations that provide a matrix format that places individuals into "disabled" or "not disabled" categories. *See Sims v. Bowen*, 666 F.Supp. 1141, 1147 (N.D. Ill. 1987); 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1. These guidelines are commonly referred to as the "grids," and they take into account an individual's age, level of education, previous work experience,

and the maximum level of work a claimant may perform. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1. The ALJ applied Rule 201.22, finding Ingram to be a younger person with a high school education or higher possessing transferrable skilled or semi-skilled skills. The grid requires a finding of "not disabled" for such individuals. *See id.*

Ingram argues that the ALJ did not put her into the correct category and maintains that the Social Security Act requires flexibility in the application of the grid for individuals who are very close to the next age category. The regulations recognize the inexactness of the mechanical grid in borderline situations, noting that "we will not apply these age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). The regulations further note:

> [i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* However, it is irrelevant that Ingram has turned another year older and is now in a different age category under the regulations. Because a disability must be shown by expiration of insured status, the last day of Ingram's insured status, December 2002, is the appropriate date for determining the applicability of the grids. *See Daniels v. Apfel*, 154 F.3d 1129, 1132-33 (10th Cir. 1998); *see also Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). Ingram was not a few days or even months from 50 in December 2002, and the ALJ appropriately determined that she was a "younger person" pursuant to the grid and

the vocational rules. As such, Ingram is not a "borderline situation," nor is it appropriate to analyze her condition and vocational abilities as a person "closely approaching advanced age." *See* § 404.1563(d); *see also Barret v. Apfel,* 40 F. Supp. 2d 31, 39 (D. Mass. 1999) (stating that for a borderline situation to apply, the claimant must be within three months or less of the next oldest age group).

### B. Hypothetical Question

Ingram next argues that the ALJ erred because she failed to include all medically supported limitations in the hypothetical question she asked the vocational expert. During the hearing, the ALJ asked the vocational expert:

> Consider a 38-year-old woman – consider a 48-year-old woman with some college and that kind of background and experience who would be sedentary and require a sit/stand option and who could do very little in terms of physical skills and had some pain problems. Would there be any work available for that person?

(Tr. 250.) The vocational expert responded that there were jobs available for similarly situated persons; specifically, 5,028 community and service positions in Wisconsin for skilled, sedentary workers, and 23,745 customer service, skilled, sedentary positions. Ingram argues that this hypothetical question and the response given by the vocational expert do not account for her pain-related impairments, her depression and anxiety, her memory problems, or her fatigue.

When an ALJ poses a hypothetical question to a vocational expert, the question must include "all limitations supported by medical evidence in the record." *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). This ensures that the vocational expert does not include jobs the claimant cannot work "because the

-8-

expert did not know the full range of the applicant's limitations." *Id.* However, the hypothetical question does not necessarily need to include every relevant physical and mental limitation; if the evidence in the record indicates that the vocational expert was aware of the claimant's limitations, the vocational expert's response to the hypothetical question may be relied upon in determining the claimant's benefits and status. *See Balenton v. Halter*, 156 F. Supp. 2d 776, 782-83 (N.D. Ill. 2001).

Prior to posing any questions to the vocational expert, the ALJ asked the vocational expert if she had reviewed the relevant files and listened to the testimony; she responded affirmatively. (Tr. 249.) The files included in Ingram's record included numerous medical reports from her treating physicians, which detailed visits and Ingram's health, diagnosis, and treatments. (*See* Tr. 89-210.) Ingram's testimony during the hearing included: her discussions of her memory problems (Tr. 240); her pain-related impairments (Tr. 231-34); her depression (Tr. 236); her sleeping patterns and problems (Tr. 244); and her pain specifically relating to her hands and typing abilities (Tr. 245-47.)

Although the hypothetical question posed to the vocational expert did not include *every* conceivable limitation suffered by Ingram, the court does not find that it was improper. As noted above, a vocational expert's review of records and appearance at the hearing remedies the failure to include each limitation in the hypothetical question. *Ragsdale v. Shalala*, 53 F.3d 816, 818-19 (7th Cir. 1995). The record does not indicate that the vocational expert misunderstood the records or was unfamiliar with them. Moreover, the ALJ included Ingram's relevant

-9-

limitations, such as her limited physical skills, pain problems, and her sitting and standing limitations, when the question was posed. Finally, it is important to note that Ingram, through her attorney, had the opportunity to cross-examine the vocational expert and raise any issues that she believed were not appropriately included in the hypothetical question. *See Ragsdale*, 53 F.3d at 819 (noting that a claimant who cross-examines the vocational expert should raise any issues she believes were not properly addressed in the hypothetical); *see also Wilkins v. Barnhart*, 69 Fed. Appx. 775 at *6 (7th Cir. 2003) (finding that a claimant waives any arguments that a hypothetical question is inappropriate when there was an opportunity to cross-examine the vocational expert and the claimant failed to raise the alleged infirmities of the hypothetical question during cross-examination).

Under these factors, the court finds that the vocational expert's responses were "probative of the claimant's residual functional capacity," and the court may presume that the expert was aware and informed of all of Ingram's limitations when informing the ALJ of the jobs available to an individual similarly situated to Ingram. *See Balenton*, 156 F. Supp. 2d. at 785. Accordingly, substantial evidence supports the conclusion that the vocational expert accounted for all of Ingram's limitations when she listed the jobs Ingram could perform.

Pursuant to the above discussion, the court does not find error in either of the issues Ingram raises. Despite the difficulties Ingram endures as a result of her physical and mental ailments, the decision of the ALJ was supported by substantial

evidence, and the court does not find any reason to remand the case for further hearings.

Accordingly,

**IT IS ORDERED** that the ALJ's decision be and the same is hereby **AFFIRMED**.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of August, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge